THE STATE v. ROY S. JENKINS, Appellant.—14 S. W. (2d) 624.

Division Two, March 2, 1929.

*Scott J. Miller* for appellant.

*Stratton Shartel,* Attorney-General, and *Walter E. Sloat,* Assistant Attorney-General, for respondent.

WHITE, J.—Defendant was charged by information in the Circuit Court of Livingston County, with the possession of liquor, November 22, 1927; was tried, found guilty, and his punishment assessed at a fine of $300. He appealed in due form.

Before the trial the defendant filed a motion to suppress the evidence on the ground that the discovery of his alleged possession of liquor was by means of a search, in violation of the Constitution.

The night of November 22, 1927, the defendant was arrested at the Thompson barn dance, about a mile and a half southeast of Chillicothe. The place, as described, was not exactly a barn, but a kind of hall, about twenty-five feet wide by about forty-five or fifty feet long. The evidence did not show what is was used for.

The Sheriff of Livingston County, Mount L. Dowell, attended that dance because he understood "there was going to be quite a bit of liquor down there—a few bootleggers and the like." He requested Ivan Thompson to appear there and assist him. Ivan Thompson had not been commissioned as deputy under the provisions of Section 11637, Revised Statutes 1919, but he had been regularly acting as deputy sheriff for two months in making "raids and seizures."

Dowell and Thompson went to the place and stood around according to a plan agreed upon, watching for violations of the law. Thompson testified on the motion to suppress and at the trial, that he was out fifteen or twenty feet east of the door. He saw Jenkins, the defendant, step out of the door and pull a bottle out of his pocket, drink from it and thrust it back in his pocket. Dowell, the sheriff at the time was about forty feet away. The arrangement between Thompson and Dowell was that if the former thought necessary he would blow his police whistle, as a call to the sheriff. When Thompson saw Jenkins take a drink and start back to the hall, he ran up between Jenkins and the door, kept him out, and blew the whistle He asked defendant his name. Defendant gave it. Thompson was asked what further he did, and he said: "That was all; Mount [meaning Dowell] was there by that time."

Dowell testified that he was standing about forty feet northeast of the hall behind a car when he heard the whistle and he walked to the place. He didn't run and he met Ivan Thompson and Jenkins about ten feet from the doorway. These questions were asked by the defendant's counsel, and these answers given:

"Q. He was then under arrest by Ivan Thompson? A. Yes, sir

"Q. Ivan Thompson had arrested him? A. Yes, sir."

"Ivan told me he saw this fellow get a bottle of liquor out of his pocket; he saw him take it out and put it back in his pocket."

The court on this evidence overruled the motion to suppress. The evidence at the trial was practically the same, except that the sheriff described further the kind of liquor. He said it was not fruit whiskey, but alcohol. He smelled it and put his tongue to it. He had been sheriff for a long time and was familiar with the taste of alcohol.

I. Defendant was charged with a misdemeanor—the possession of intoxicating liquor. The State makes the point that under Section 25 of the Act of 1923, an officer may arrest with or without a warrant for any violation of Article VII, Chapter 52, Revised Statutes 1919—the chapter relating to intoxicating liquors, including Section 6588, which makes it a misdemeanor to possess liquor. The provision referred to, beginning at the bottom of page 245, and continuing on page 246, Laws of 1923, says:

"Nothing herein shall be so construed as to prevent any officer whose duty it is to make arrests from arresting, with or without a warrant, any person or persons *found* violating any of the provisions of this act, or any of the provisions of Article VII, chapter 52, R. S. 1919."

That provision adds nothing to the common law, so far as misdemeanors are concerned. The officer may arrest any person *"found"* violating the provisions of Article VII. If he is found violating it then it is done in the presence and view of the officer. There is nothing in the language to show that the Legislature intended to give officers any more authority to arrest for misdemeanors in liquor cases than in other misdemeanors. [State v. Gartland, 304 Mo. 1. c. 100-101.]

II. Appellant complains here that Thompson was not commissioned as a deputy, therefore had no right to arrest him and his search was illegal.

The motion to suppress describes Thompson as the sheriff's deputy. It says: "The Sheriff of Livingston County and his deputy and other persons acting with him and under his direction unlawfully took and had in possession" one pint of alcohol which the State intends to introduce in evidence. "That the said alcohol was unlawfully seized and taken possession of by the said *officers* November 22, 1927, from the person of defendant at a dance called the Thompson's barn dance."

In the evidence on the motion the defendant first proved that Ivan Thompson was a deputy and had been acting as a deputy for two months. And then the defendant's counsel asked the questions and elicited the answers set out above.

Dowell then described how he took a bottle of whisky from defendant's pocket.

Thus at the hearing on the motion to suppress the defendant proved that Thompson was a deputy and regularly arrested him, before the whisky was taken from his pocket. He is confronted with this dilemma:

If Thompson was not a deputy his search and discovery of the liquor was not ground to suppress, because the Constitution protects only against unreasonable search by *officers*.

If Thompson *was* an officer, the offense if any was committed in his presence, because he saw defendant drink from the bottle and put it in his pocket.

If, as defendant claims, he was not arrested at all until after Sheriff Dowell took the bottle out of his pocket, he is in no better situation, because the bottle already had been *discovered* by Thompson; the sheriff's rape of the bottle added nothing to what was not already known. If the defendant suffered some indignity by the manhandling of the sheriff or of Thompson, he has his legal remedy, but it is not in a motion to suppress evidence which was already discovered and available.

With the facts before him the trial judge correctly overruled the motion to suppress.

III. The defendant testified that he did not see anyone as he stepped out of the hall. He said:

"I was looking for a dark place; I was going to take a drink out of this bottle and I started around the corner into the dark to do it."

Then the question was asked:

"Q. Was this your whisky? A. No."

On motion of the State's attorney over defendant's objection and exception that was stricken out. The defendant further testified that he did not succeed in taking a drink; he heard someone coming and he thought he was held up. He hastily thrust the bottle in his pocket. This was stricken out, and the defendant duly excepted. He then offered to show that the whisky which was taken from him by the officers was not his whisky; that he only had it in possession to take a drink and return it to the owner. That he had no control over it. The evidence was excluded and the defendant excepted.

The point turns upon what is meant by "possession." Section 6588, Revised Statutes 1919, as amended by the Act of 1921, provides that it shall be unlawful for "any person . . . to manufacture, sell, *possess*, give away or transport intoxicating liquors within, . . . the State of Missouri, except as hereinafter provided."

The word "possess" was inserted by that amendment. The proviso to that section excludes the lawful possession, ownership, handling, utensils for the manufacture, permitted under the regulations of the United States Treasury Department. And it excludes from the operation of the act liquor in the private residence of the owner when such intoxicating liquor had been lawfully acquired.

The Springfield Court of Appeals in State v. Compton, 297 S. W. l. c. 414, quoted from Corpus Juris the following definition of possession (33 C. J. 585):

" 'To possess' means to have the actual control, care, and management of the liquor, and not a passing control, fleeting and shadowy in its nature. Neither ownership nor actual physical possession is essential. And possession through a coprincipal or through an innocent agent would come within the purview of such statutes."

And in State v. Lane, 297 S. W. 709, that court again repeated that definition of possession as the term is used in Section 6588, Revised Statutes 1919. In the latter case the defendant was arrested with a bottle in his hand, which he was handing to another; the bottle was seized and he was arrested. He was tried and convicted of having "possession" of intoxicating liquor. The Court of Appeals reversed the judgment and discharged the accused. See also State v. Huff (Mo.), 296 S. W. 1. c. 122.

It is evident that the Legislature didn't mean anything unreasonable in the use of the term "possess" and "give away" in Section 6588. To "possess" meant such possession as would be in violation of the purpose of the law.

The Supreme Court of Kansas, which had enjoyed the possession of a prohibition law for many years before the Eighteenth Amendment went into effect, whose courts no doubt are alive to all subterfuges to evade the enforcement of the law, in State v. Munson, 206 Pac. 749, in 1922, had under consideration this very question. The statute of Kansas made it unlawful for any person to keep or have in possession "for personal use or otherwise" any intoxicating liquors, etc. That court said:

"It will be observed the statute does not punish personal use of intoxicating liquor. Keeping or having in possession for personal use is made a crime; . . . but drinking intoxicating liquor is not unlawful, by virtue of this statute, or indeed in any other statute, except that relating to public drinking. . . . In order to aid in the enforcement of the liquor law, the purchaser of intoxicating liquor was not made a guilty participant in the sale [citing cases]; and probably for the same reason the person who drinks intoxicating liquor kept by another is exempted from punishment."

Then the court defined possession:

"In this instance, possession may not be attributed to the defendant, because an essential element of possession is lacking. The person having custody simply handed the liquor to the defendant to take a drink. The liquor was accepted for that purpose only. The quantity appropriated, if any, was consumed by the act of appropriation, and the remainder, if any, was not held under any continuing claim of exclusive use."

The judgment was reversed and the defendant discharged.

In Kansas it is no crime to *use* intoxicating liquor, but it is a crime to possess it for use. Up to date no statute has been enacted in Missouri making it a crime to drink intoxicating liquor, nor to keep it for *use*, as in the Kansas law.

The defendant here offered to prove the very facts which the Kansas Supreme Court held was no crime, and our trial court excluded the evidence.

An analogous ruling occurred in this State in State v. Fulks, 207 Mo. 26, where Judge JAMES B. GANTT, in 1907, had under consideration the violation of the local option law which prohibited the giving away of intoxicating liquor. The court held (1. c. 39) that the gift was in no sense a courtesy or hospitality, but was a moving inducement to a customer to buy his goods. That the gift and sale was all one transaction and was "clearly a subterfuge adopted in an attempt to evade the law." It was further held that the "give away" provision was to prevent evasion of the law by indirectly selling such liquors in a local option county. The opinion said (1. c. 40):

"But it was never intended to cover *the mere gift of a drink of liquor* by a private person, who is in no sense a dealer in liquors, to one of his friends as a mere act of courtesy or hospitality."

We believe that Kansas, with a stricter and more definite statute than ours, has not construed the term "possession" amiss.

The defendant hunted a dark place to take his drink. Before a jury that might be urged as evidence of conscious guilt. As appropriately it may be called conscious guilt of violation of the convention and not of the law.

Of course we do not know that the defendant could prove that the liquor he had in his possession was not his; that he had it only for the purpose of taking a drink, but that is what he offered to prove and, as far as his evidence got in and was stricken out, it indicates that he would swear to it. It was a question for the jury to determine whether he had such exclusive possession as is contemplated by the statute. Being a question for the jury it was error to refuse to allow the defendant to introduce evidence upon the issue.

The judgment is reversed and the cause remanded. All concur.